Case No. 09-2212, Charles Pankros v. Fred Tyler v. Ricky Dane Good morning, Your Honor. I'm William Suriano on behalf of the plaintiff in the lower court, the appellant here, Charles Pankros. Good morning, Justices. My name is James Roach on behalf of the defendant, Appalachians. Thank you, gentlemen. You may proceed when ready, Mr. Suriano. My question to you, Mr. Suriano, to start you out in terms of what I think is generically the issues that we confront here, is how does your position differentiate an illegal gambling house from a dram shop? If you're going to hold the gambling house liable for debts incurred, if the plaintiff is going to hold the gambling house liable for debts incurred by the husband, how, through the use of the RICO, are you going to escape the problem that any business has in the absence of a dram shop? Well, I think, Your Honor, that that question focuses on the gambling activity as though that were the complaining activity. Supposing there were the use of mail involved just in maintaining an illegal gambling institution, why get the credit cards involved yet? Supposing there was mail fraud, which I'm sure the way the Mail Fraud Act is interpreted, that it can be extended to a normal, gambling operation since telephones are used and there may be notifications and cross-communications through the use of the United States mail, so that you don't really need the fraudulent credit card to get a RICO violation into a gambling operation. So why should, and basically what you're saying in your case is that the RICO violation both gives standing to the plaintiff based on the marital assets and gives proximate cause to her injury. That's what you would be saying. Would you be saying that if credit cards were not involved? Because I think the credit card is almost superfluous. Well, I think that's the nub of the case, Your Honor. Why is credit card, if there is a mail fraud violation on the part of the gambling proprietor without the credit card being involved, then the credit card being involved is superfluous. It may well be. If there is mail fraud in connection, if there is under the RICO Act, if there is a person who operates an enterprise. Who uses a telephone. I'm not sure if it applies to using the Internet, but it certainly applies to using the telephone. I remember that from my days when I was a district court law clerk. We used the telephone a lot in establishing mail fraud. So the fact that you have a credit card involved is a super added factor. Because it isn't, after all, the credit card company that's suing. It's someone else. Well, because the credit card company wasn't harmed. Its bills were paid out of the marital estate. Well, that would depend on its contract. If it honors an illegal bargain, it could have a credit card contract saying that it can't charge back to its customer. But be that as it may, the credit card is not the linchpin here. It's the mail fraud. Mail fraud is the linchpin because that is, under the RICO Act, one of the predicate acts, one of the categories of predicate acts that serves as the basis for RICO violation. It happened here that the mail fraud upon which we're relying was the fraudulent credit card submissions. It's not. It's not. The direct injury here is not by the wife. She is not the one who is directly injured by the actual fraud. She is a consequential victim, as is, for example, the state of New York in the Holmes case, and so far as there was a Jenkins Act violation in Mexico requiring a transmission of those who, of all purchasers of cigarettes without paying taxes to the city of New York, and since that transmission wasn't made, customers made those purchases and cheated on their taxes because they had an independent private duty to pay their taxes. So there was an attempt by the city of New York to get its taxes back from the vendor in Mexico who didn't violate any taxation laws but only the rule that he is supposed to transmit the names of the customers. In that particular case, the court, the Supreme Court, the United States Supreme Court, held there is no RICO application, and it used Holmes also in ANZA and in several other cases where there was, for example, violations of, ten to five violations of the Security Act, fraudulent promotions of securities that led to the breakdown of a customer, of a broker-dealer for whom SIPC then had to fill in and supply. SIPC tried to sue the original violators. The Supreme Court said, no, there is no direct injury by the violator, and consequently there can be no recovery under SIPC for that violation based on considerations of proximate cause. How are you different? Well, let's talk about Holmes because that's the fundamental case that ANZA relies upon. Holmes and ANZA were the two cases that the trial court relied upon. In Holmes, you had defendants who manipulated a stock price. They manipulated a stock. They sold those stocks at the manipulated price to broker-dealers. Those broker-dealers, in turn, sold those stocks to their customers. And when the manipulation was discovered, the broker-dealers then had a problem. They had to make good to their customers who had purchased the stock, and they were unable to do that. And as a result, the broker-dealers went bankrupt. They were insolvent. And that's when the SIPC stepped in. They had trustees appointed, and the SIPC marshaled the assets to the trustees of the broker-dealers. They paid what claims they could. They ended up short, and so the SIPC had to kick in some money to make claims of the customers the broker-dealer did. There are other cases, too. Let's get them all out here because I think you have to overcome all of them because they're all from the Supreme Court, albeit the mother ship is Holmes, okay? But the case where your competitor doesn't pay his taxes. Consequently, he undercuts you in prices, and you then try to sue based on a RICO violation when you are not the direct victim because it's the government that is the direct victim but a consequential victim. And the Supreme Court said, we're not extending RICO in those directions. We're going to control it under a rather close proximate cause in house. And I appreciate that, Justice Gordon. If we go back to Holmes, what the court said in Holmes was the SIPC argued, well, we've been subrogated to the claims because we had to pay off these broker-dealers' customers. What they sued for, what the SIPC sued on, is we represent the customers who didn't purchase the manipulated stock. That's the people who they purported to represent in Holmes, not the people who purchased the manipulated stock from the broker-dealers, but the other customers who lost their money because the broker-dealer failed, even though they had never purchased the stock. And there the Supreme Court said, you know what? SIPC, you can't do that because those people who you purport to represent, and there were issues about subrogation and statute and other things that they said you don't even have the right to do this, but those folks were not harmed by reason of the RICO violation. They were harmed because their broker-dealer went down the tubes and couldn't pay their claims. That is very different from what you have here. So that's not how Justice Souter characterized the problem, and that's not how it's been interpreted in ANZA or in HEMI or even to the extent, although it doesn't go the same direction, in the Phoenix case, in the Bridges case. I understand. And if we get to ANZA, which is the other case that the trial court relied upon, the only other case that the defendant cited on this point, ANZA, as the court pointed out, involved competitors saying, by virtue of not paying your taxes to the State of Illinois, you've been able to undercut our price. And therefore, we've been competitive. Well, how are you different in your contention, the wife saying, the wife in the process of a divorce, perhaps ex-wife, saying that you depleted the marital estate because you conveniently encouraged my husband's gamble. I'm not sure it's that articulate. But I think simply saying that in fraudulently collecting on the husband's credit card for an illegal gambling debt in an illegal transaction, you've diminished my marital estate. You've diminished my marital estate. Well, why is that any different than the competitor saying that you undercut my profits by facilitating a cheaper competitive price? Because the funds that were being put through on fraudulent credit card transactions were as much hers as his. Well, here, let's take it one step further. That's not the issue. In the ANZA case, it's even more so. There's no question. You're relating to a standing issue. I'm not putting it in terms of standing. I'm putting it in terms of the Supreme Court's analysis of proximate cause. As a matter of fact, there is a standing question. Because I'm not sure, and no one has persuaded me as of yet, but that the rights to the marital estate are that they're vested rights as opposed to being potential rights and the question whether there actually is standing. But we don't have to get into it. Because in ANZA, there's no question that those who were suing there owned the store that was being undercut. They had standing, but there was no proximate cause. But what you're talking about there are two competitors and a competitive injury. We're not talking about a competitive injury. We're talking about an injury to, under the terms of the complaint, the property that my client owned. And it happened directly as a result. Let's assume your client owned it. Well, the state provides that. May have had a potential right to that marital estate once there was a judgment made by the trial court on its allocation. I'm not sure what the extent of proprietary interest there actually is in a spouse to a so-called marital estate. I don't think she can, for example, use the husband's bank account to buy herself a trip to Florida, technically, without the husband's permission at that point. So she may not have a proprietary interest in his bank account, but when it comes to a divorce settlement, the marital estate is recognized as the estate to be allocated among the parties. Well, that's when the proceeding is commenced by statute. And we cite that in our brief, 750 ILCS 5-503D. What we're talking about here is that marital estate that vested as a common asset of the husband and the wife. Basically, he pleaded the amount of property available for the court to allocate in its decree. Correct. So that's even less than having any kind of estate in the property, any kind of proprietorship in the property. It's a right without necessarily a proprietorship. Doesn't mean you own it, you may have a right to enforce it, to collect on it. You have a common interest in whatever it is at the time that the divorce proceeding is commenced. I'm telling you, lien holders have the same right. For example, if I had a lien on your bank account, or somebody doesn't pay you your fees, and you have a Chinese lien, and you come to collect it and execute on it, and there's no money because he's gambled it all away, would you be able to use RICO to go against the gambling house for letting him gamble his money away, or are you making an illegal transaction with his credit card? I would say that now you're getting into more tenuous approximate cause relationship. It's not that more tenuous. You have a lien. A lien gives you some proprietary right. It gives you an interest in property. In someone else's property, here you don't say it's someone else. It's property that is being depleted by the debtor's gambling habits. Well, and she is a co-common owner of the property. It's an imaginative effort, but its time may not yet have come. That's the problem, Mr. Siria. I'm not bottom lining it, but I'm indicating I think you're not oblivious to the fact that its time may not yet have come. Well, I'm not oblivious to that fact, but I do think if you look at what RICO is all about, and if you're going to focus on the property here, whose was it, and what the defendants did to harm my client, what they did to harm my client was no different than if they had taken directly a piece of her property and used it illegally. That's exactly what they did. They took her property. It was common property by statute. It invested as a common interest, and they took that, and they frittered it away by filing with credit card companies fraudulent charges. They didn't fritter it away. They put it in their bank account. Yeah, that's exactly right. That's exactly right, and that's what RICO goes after. RICO goes after those people. You'd be perfectly right if it weren't for four decisions by the Supreme Court that says you're wrong. Well, but I think every one of those decisions, I think every one of those decisions deals with a factual circumstance that is very different than ours. Holmes and Anza and Heinold all deal with circumstances that are far less direct than what we're dealing with here, and what we're dealing with here is an order of magnitude different than the interests that were being talked about there. You have a common interest here. Is there anything else? I have something. Let's assume in the evidence of this case that he lost at this gambling is the wife's testimony, isn't it? She says he lost. Isn't that true? I'm sorry. The wife testified her husband lost money on the machines. Is that where the evidence came from? How do we know he lost? Because in the context of the divorce proceeding, and this is not a record, but in the context of the divorce proceeding, they hired a forensic accountant who went back and looked at transactions and realized you can't spend $600 a day on hamburgers. Wait a minute. Let's assume he won and he kept the cash, okay? I mean, there's no real evidence that he lost here. Just an accountant saying that the credit card showed that this is the money that was spent, therefore, he played the gambling machines, therefore, he lost. There's no testimony that he lost. Well, we didn't get past the motion to dismiss. There will be testimony. But wouldn't you have to have that in your complaint? We do allege that by virtue of what happened here, that the marital assets were dissipated. Well, let's assume that he won and he lied or he kept the money and he disguised the money. Would you still have a RICO case? We would have a different proof problem at trial, certainly, if the defendants wanted to come in. What was the burden on? The burden of pleading right now is on me. The burden of proof ultimately on trial is on me. And I would have to draw the causal connection to show that he gambled and he lost money. Well, at this stage, you have to draw a complaint that shows a cause of action. Well, and I think we have done that. We have shown and we allege in the complaint that by virtue of the submission of all these fraudulent credit card statements is the marital estate paid funds that it never should have paid. We're focused on the mail fraud. If he had gone in to either one of these bars with the intention of gambling and they had said to him, you know something, pal, you've got to have money. And he said, well, I have no money. Well, you take a credit card, but you've got to put it through his food. Or they would say, we have to put it through his food. And they say, wait a minute, we're not going to do that. That's fraudulent. Then he would not have lost a dime at gambling at these places. But you see, you don't know that he lost. That's why you have a trial. Never mind if he went to Las Vegas and lost it. He would not have any cause of action. Or if he spent it on an expensive Mercedes and crashed it without buying insurance, you wouldn't be able to go against Mercedes. So you don't really have full control over the expenditures to trace it clearly to the gambling factor, which also shows you why I was careful not to let you call it a property right in the marital estate, because he could have dissipated those assets. And it simply would result in a judgment by the trial court to take into account the dissipation. But there could be no retrieval of the funds he dissipated from the vendors before whom he dissipated it. He could have taken one of those millionaire's trips to the space station for $22 million. And the government would be entitled to collect it. But, of course, the trial judge would call it a dissipation of assets. But it's not her asset that he dissipated. Well, and all these things that you're talking about, all the speculation about what he might have done, what he could have done, I think are issues that fairly would be something that the defense would raise at trial. They would probably, you know, maybe call him as a witness and say, look, if you call the gamble here, would you gamble this way? Well, one of the things, this proximate cause factor is not extraneous to the analysis, because I think, I don't know about Justice Kennedy and ANZA, I think, makes allowance for the speculative nature of this kind of damage, that the funds could have been spent in all kinds of ways without being able to reach the RICO defendant. And he did factor in that one of the difficulties in that type of case was, how do you prove what was really causally connected by the RICO violation as opposed to something else? And I agree that there is some speculation that that is permitted there. But here we have an allegation and a complaint that by virtue of what happened here, the marital estate was diminished by virtue of not what he did in terms of gambling, but what the defendants did in terms of submitting fraudulent credit card statements. That is not a difficult matter to prove. All you have to do is look at the credit card statements and what they submitted. And I would submit that, you know, $600 a day for hamburgers is, on its face, a little difficult to establish that that has something other than an illegitimate purpose, given what my client's husband would say about his gambling activities. Why don't I give you 30 seconds to wrap up, because, unfortunately, we have to keep an eye on the client. In 30 seconds, what I would say is, what you have to do is you have to look at the RICO statute and see if what, and I think there's no issue here as to the strict pleading requirements of RICO violation. We've pled persons, we've pled enterprise, we've pled predicate activity. The issue of proximate cause is a factual issue that I think what evidence is the discussion here is, hasn't been fleshed out factually, but that's why you have a trial. That's why you have a proceeding. There are sufficient allegations in the complaint right now to show that but for what the defendants did, there would not have been fraudulent credit card billings, there would not have been a diminishment of the marital estate to the extent that they diminished it with those billings, and my client, with a common interest in that estate, suffered a direct injury as a result of that. And they do owe her a duty under the RICO Act as an injured party. So from our perspective, we've met the pleading requirements, which is what the issue here is, for a RICO violation in the factual circumstances of this case, and it was fair for the court to dismiss that complaint with prejudice. Thank you. Good morning, Justice. It's again James Roach on behalf of the defendant appellee. We believe, Your Honor, if you look at the plaintiff's complaint and read it, basically what it says is that her ex-husband is a drunk and a gambler. I'm sure every ex-spouse in the world would love to sue somebody when their spouse is a drunk and a gambler. But in this case, we have, as the Court has already pointed out in Anza and Holmes, the decision by the U.S. Supreme Court that even though you may be an injured party, does not give you the right to sue on a RICO. There has to be a direct causal connection to hook up proximate cause. In this case, if she has a cause of action, the plaintiff in this case, it's against her ex-husband. We all know that in divorce proceedings, there's a dissipation of assets. She could have gone after him. I don't know what happened in the divorce because we weren't part of it. All I know is that this woman apparently was married to a drunk and a gambler, and he spent money. That's all we know. No, we know more than that. We know that everything in the pleadings is true and correct because on a 615 motion, that's the assumption you have to make. So we also know that the defendant operated an illegal gambling house and that he illegally used the credit card to reimburse himself. That's a fact that exists as true until trial, if it were tried, until the evidence comes in because you have to assume the truth of a pleading if you're going to entertain a 615 motion. So the question is not whether the allegations against the husband or against the defendant are true, but whether they're actionable. I agree, which again brings us back to Anza and Holmes. In that case, as you pointed out already, Justice Kennedy said there has to be a direct causal connection between the parties and the wrong to go under RICO. So as the case has already pointed out, every injured party does not get relief. There has to be direct causal connection. The trial court in this found that under those United States Supreme Court cases, there's no direct causal connection. This plaintiff, these defendants, even as I agree, which as Justice pointed out, under 615, we have to assume that the facts are, even though we deny them, the facts are true for the sake of this argument. But we point out there's no... Well, if he doesn't get the money from them, then he doesn't lose the money. If he doesn't... If he doesn't get the money from the tab, then he doesn't lose the money. That's true. Why isn't that a direct injury? Because he's not involved in this case. He's not the plaintiff in this case. Therefore, there's not the direct causal connection. The plaintiff is his ex-spouse. If you take that logic under RICO, every guy, every person, I shouldn't say guy, every person who's an alcoholic then could sue the manufacturer of whiskey because he drinks too much Jim Beam. Because drinking too much... Or you could sue the proprietor of a cram shop because there's a statute. That's why I started out by saying that this case perhaps would try and institute a cram shop rule without a cram shop statute using RICO. I agree. And then, therefore, any illegal act, any spouse could sue for their spouse's involvement in an illegal act. You pointed out, Your Honor, he bought a Mercedes convertible for $100,000 but didn't get insurance on it, even though it's required to get insurance in the state of Illinois, and he went out and smashed the car. Could he sue the car dealer? I don't think so, not under RICO. And I don't think there's any direct causal connection in this case to sue these defendants under the Holmes and Anza case. And I think that's the problem with the plaintiffs. I think that's what the trial court saw. That's why twice he allowed the plaintiffs to file an amended complaint and twice he denied their motion. And that's why I think because of the Supreme Court cases. Thank you. Thank you. Any rebuttal? I really don't, Your Honor. Okay. Good rebuttal. This case will be taken under advisement and the court will stand adjourned.